[Crim. No. 678.  First Appellate District.—June 14, 1917.]

In the Matter of the Application of CECIL E. HITCHCOCK, for a Writ of Habeas Corpus.

MUNICIPAL CORPORATIONS—REGULATION OF PRIVATE PATROL SYSTEM—"MUNICIPAL AFFAIR."—The matter of the licensing and regulation of a private patrol service or system within designated limits of the city of Oakland is a "municipal affair" within the meaning of section 6 of article XI of the Constitution, investing municipalities with full power to legislate in all matters embraced within the term "municipal affairs," uncontrolled by general laws.

ID.—PRIVATE DETECTIVE ACT—CONTROL BY MUNICIPAL ORDINANCE.—In so far as the act of the legislature, approved June 7, 1915, licensing and regulating the business of private detectives and detective agencies, undertakes to provide that private detectives holding licenses from the state board of prison directors might act, or authorize their

employees or operatives to act, as uniformed patrolmen or watch-
men within the city of Oakland, but without complying with the
local ordinances of such municipality regulating such service, the
provisions of the act must yield to the superior control of the city
ordinance regulating the granting of permits to conduct or main-
tain any private patrol system or service in the city.

ID.—VALIDITY OF ORDINANCE—REFERENCE OF APPLICATIONS TO CHIEF OF
POLICE.—An ordinance regulating the granting of permits to con-
duct a patrol service, fixing a license therefor, and providing a pen-
alty for violations, is not invalid, because of the provision that
applications shall be referred to the chief of police, who shall make
investigation and report to the council.

APPLICATION for a Writ of Habeas Corpus originally
made to the District Court of Appeal for the First Appellate
District.

The facts are stated in the opinion of the court.

Fitzgerald, Abbott & Beardsley, for Petitioner.

W. H. L. Hynes, District Attorney, and James M. Koford,
Assistant District Attorney, for Respondent.

RICHARDS, J.—Application for writ of *habeas corpus*.

The petitioner was arrested upon the charge of having vio-
lated the terms of a certain ordinance of the city of Oakland
adopted by the council of said city on January 19, 1917, desig-
nated as Ordinance No. 1132, N. S., by engaging in the busi-
ness of conducting, maintaining, and soliciting business for a
patrol service or system without first obtaining a permit so to
do from the council of said city of Oakland in conformity with
the requirements of said ordinance.

The petitioner makes several assaults upon the applicability
of the ordinance to him and upon its general validity, which
will require a brief statement of the terms of the ordinance
for their consideration.

The ordinance purports by its title to be an ordinance regu-
lating the granting of permits to conduct or maintain any
patrol service or system in the city of Oakland, fixing a license
therefor, and providing a penalty for violations thereof. In
the body of the ordinance the terms ''patrol service'' and
''patrol system'' are defined to be any service or system which

purports to furnish to members or subscribers for a consideration or otherwise any watchman or guard, either uniformed or otherwise, to patrol any district in the city of Oakland, or to guard or watch any property therein, or to perform any service usually or customarily performed by the regular patrolmen of the police department of the city of Oakland. It is made unlawful for any person, firm, or corporation, either as principal or agent, to engage in the business of conducting or maintaining or soliciting business for any such patrol service or system without first obtaining a permit from the council of said city so to do; such permit to be obtained by an application in writing to the council, which application shall be referred to the chief of police, who shall make an investigation concerning the character of the applicant and the condition of police protection prevailing within the designated district, and report thereon to the council, which shall have power to grant or deny the applicant permission to engage in such business, but which permission shall be granted unless it shall appear from the report of the chief of police that the applicant is not a person of good moral character, especially in the qualities of honesty and integrity, or that the designated district is already supplied with sufficient or ample police protection by the city or by a patrol service or system or by both. A license fee of one hundred dollars per annum is required from the holder of permission for the conduct of such patrol service or system under the terms of said ordinance.

The main question presented by the petitioner herein is that he is exempted from the operation and effect of such ordinance by the fact that he is the holder of a license issued to him by the state board of prison directors under and by virtue of the terms of an act of the legislature of the state of California entitled, "An act to license and regulate the business of private detectives and detective agencies," approved June 7, 1915 (Stats. 1915, p. 1253), and still in force and effect. This act provides for the granting of licenses to private detectives and detective agencies by the state board of prison directors, and in section 5 thereof it is provided that "A license obtained from the said board of prison directors by any person or persons, firm, association, copartnership or corporation mentioned in section one of this act, shall be sufficient to give to said person or persons, firm, association, copartnership or corporation obtaining said license, their em-

34 Cal. App.—8

ployees or operatives, the authority to act under said license as a detective or uniformed patrolman or watchman in any county, city and county, city or town in this state.'' Section 6 of the same act also provides that ''This act shall supersede and take the place of any rule, regulation or ordinance of any county, city and county, city or town in the state of California conflicting therewith.''

It is plain from a reading of the sections of the act above quoted and from the terms of the ordinance in question here that the act and the ordinance are in conflict, and the first matter to be disposed of is the determination as to which should prevail.

By the charter of the city of Oakland the council is given power ''to make and enforce local police, sanitary and other laws and regulations'' (art. V, sec. 51, subd. 1); also ''to organize, provide, maintain and operate police and fire departments'' (art. XIX, sec. 51, subd. 5); and also ''to license for purposes of regulation or revenue all and every kind of business not prohibited by law.'' (Art. IX, sec. 51, subd. 31.) The state Constitution (art. XI, sec. 6.) invests municipalities with the fullest power to legislate in all matters embraced within the term ''municipal affairs'' uncontrolled by general laws. Is the matter of the licensing and regulation of a private patrol service or system within designated limits of the city of Oakland a ''municipal affair?'' It would seem clear that upon the authorities this question must be answered in the affirmative.

A municipal affair is one which refers to the internal business affairs of a municipality. (*Fragley* v. *Phelan,* 126 Cal. 383, [58 Pac. 923].) The most frequent and usual form in which a municipality manifests its control over its municipal affairs is in the passage of police and sanitary laws and regulations for the protection of the property, lives, and health of its inhabitants within the whole or designated portions of its area, and when a city, either through its charter or ordinances, undertakes to provide a scheme for such protection in relation to a subject matter which is not either expressly by the Constitution, or impliedly from its nature, committed to state control, the subject matter thus laid hold upon by the municipality becomes a municipal affair over which the state legislature may no longer exercise control. (*In re Prentice,* 24 Cal. App. 345, 141 Pac. 220.)

Referring to the particular subject of the ordinance under review in this case it would seem to be clear that the establishment of a private patrol service or system over a designated area within the corporate limits of the city of Oakland is essentially within the definition of a municipal affair. The primary purpose of such a service or system is to supplement the regular or police supervision of the city by supplying protection to the property and lives of those of its inhabitants who may reside beyond the limited circle of more immediate official watchfulness, or who for any reason may desire or need special protection. Being thus supplementary to the regular police forces and energies of the municipality it would seem to be essential to the harmonious working of such a service or system that it should be the subject of civic supervision and control, and that in so far as the act of the legislature above referred to undertakes to provide that private detectives holding licenses from the state board of prison directors might act, or might authorize their employees or operatives to act, as uniformed patrolmen or watchmen within the municipality, but without complying with the local ordinances of such municipality regulating such service, the said provisions of said act must yield to the superior control of the municipality over the subject, for the reason that, as we have seen, it is strictly a municipal affair.

It is further contended by the petitioner herein that the ordinance in question interferes with his powers and rights as a deputy constable under the state law, but in respect to this contention it is to be noted that the ordinance by its terms is limited in its application to those business firms or corporations who are seeking to maintain a patrol service or system, and has no application to individuals who are either officially or unofficially performing the ordinary functions of such peace officers as sheriffs or constables. The charge upon which the defendant is held in custody is that of unlawfully engaging "in the business of conducting, maintaining, and soliciting business for a certain patrol service without having obtained a permit so to do," in accordance with the terms of the ordinance in question. It cannot seriously be contended that the doing of these acts is within the range of the statutory functions of a constable or his deputies.

The final contention of the petitioner is that the ordinance in question is invalid, for the reason that it attempts to invest the council and chief of police of the city of Oakland with

arbitrary power to grant or deny to any person seeking to engage in the business of conducting or maintaining a patrol service or system the right so to do.

We do not so construe this ordinance. It assumes to deal with a subject involving the granting of permits to persons, firms, or corporations to conduct and maintain a patrol service or system. It is evident that certain qualities of character and personal fitness should be required in the holders of permits which would thus officially entitle them to perform the peculiarly delicate and important duties required in the maintenance and conduct of such a patrol service or system involving, as it would, the protection of the property and lives of inhabitants of the designated district of said city during the night-time or during periods of special social strain or stress. The ordinance recognizes that a large degree of discretion must be reposed in the council of said city in the matter of granting or refusing these permits, and it therefore proceeds to provide a method by which the council may become informed as to the presence or absence in the applicant for such a permit of those qualities of moral character in respect especially to honesty and integrity which should form the basis of their official sanction. It is provided that the application shall be referred to the chief of police for investigation and report touching these matters, upon the presentation of which the council shall proceed to grant or deny the permit. We perceive no arbitrary grant of power to the council in these provisions, and it is not contended that the council has acted arbitrarily in the case before us. In fact, that body has not been called upon to act at all upon the individual case of the petitioner herein, for he has not applied for the permit required by the ordinance, the validity of which he here assails. His contention that the ordinance is invalid because it provides for a delegation of the powers of the council to the chief of police in the matter of the required investigation into the moral qualities of the applicant for a permit has no merit. The duties of the chief of police in the premises are merely advisory to the council, in which by the express terms of the ordinance is reposed the ultimate right to grant or refuse the permit.

It is ordered that the petition be dismissed and the petitioner remanded.

Lennon, P. J., and Kerrigan, J., concurred.